**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| BEVERLY STAYART, | ) | |
| a/k/a BEV STAYART, | ) | |
| an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 10-C-0336-LA |
| v. | ) | |
| | ) | Hon. Lynn S. Adelman |
| GOOGLE, INC., | ) | |
| A Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF BEVERLY STAYART'S MOTION**
**TO ALTER OR AMEND JUDGMENT PURSUANT**
**TO RULE 59(e), F.R.C.P. AND REQUEST FOR CLARIFICATION**

NOW COMES Plaintiff, Beverly Stayart, a/k/a Bev Stayart ("Stayart"), by her

undersigned counsel, and pursuant to Rule 59(e), F.R.C.P., moves this court to alter or amend its

judgment entered in this matter on March 8, 2011. Plaintiff also requests clarification of this

court's accompanying order and decision of March 8, 2011. In support thereof, Stayart alleges

as follows:

**INTRODUCTION**

In this action, Stayart alleges that an internet search engine, defendant Google, Inc.

("Google"), has used her name and images for purposes of advertising and trade, in violation of

Wisconsin law. Jurisdiction is premised on diversity jurisdiction, pursuant to 28 U.S.C. § 1332

(a).

On March 8, 2011, this court granted Google's motion to dismiss, pursuant to Rule

12(b)(6), F.R.C.P. (Decision and Order, March 8, 2011, Document #49, at 3).

More specifically, this court held (*Id.*):

In order to state a claim under § 995.50(2)(b) or Wisconsin common law, plaintiff must allege sufficient facts to enable me to plausibly infer that Google used her name for advertising or trade purposes. Plaintiff fails to do so.

This court then stated (*Id.*):

First, plaintiff alleges no facts which suggest that her name has any commercial value or that Google derives any pecuniary benefit as a result of this connection on the internet between her and sexual dysfunction medications. Second, plaintiff alleges no facts which suggest that Google used her name for any purpose much less that of advertising or trade. Plaintiff's allegations establish no more than that Google enables internet users to access publically available materials connected to plaintiff's name.

This court then concluded (Decision and Order, March 8, 2011, Document #49, at 4-5):

[B]ecause plaintiff alleges no facts which suggest that her name has any commercial value or that any company could obtain pecuniary benefit from connecting her name to sexual dysfunction medications her allegation that Google sells "bev stayart levitra" as a keyword to companies that sell sexual dysfunction medications is unsupported by facts and implausible. (Footnote omitted.)

**ARGUMENT**

A.    Standards for a Motion to Alter or Amend a Judgment

A party may properly use a motion to alter or amend a judgment under Rule 59(e), F.R.C.P., to request the trial court to correct errors of law or mistakes of fact in its judgment. *United States Labor Party v. Oremus*,, 619 F. 2d 683 (7th Cir. 1980). While 59(e), F.R.C.P. refers specifically only to alteration or amendment of a "judgment," it has been broadly construed as permitting the trial court to vacate and set aside orders disposing of actions before trial, including dismissal orders. *A.D. Weiss Lithograph Co. v. Illinois Adhesive Products Co.*, 705 F. 2d 249 (7th Cir. 1983); *American Family Life Assurance Co. v. Planned Marketing Associates Inc.*, 389 F. Supp. 1141 (E.D. Va. 1974).

It is also appropriate to seek reconsideration when the applicable law has changed since an issue was submitted to the court. *National Union Fire Insurance Co. v. Continental Illinois*

*Corp.*, 116 F.R.D. 252 (N.D. Ill. 1987); *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282 (N.D. Ill. 1988).

B. <u>A Change in the Law Has Occurred</u>

Stayart requests that this court reconsider its decision and order of March 8, 2011, based on a recent change in the case law which supports the allegations in her complaint.

In *Daniel Jurin v. Google Inc.*, No. 2-09-cv-03065-MCE-KJM, 695 F. Supp. 2d 1117 (E.D.Cal. 2010), at issue was Google's keyword suggestion tool in its for-profit AdWords program. Jurin sued Google because Google's AdWords program suggested "styrotrim," his trademark for building material, and then displayed certain "Sponsored Links" ads of his competitors when internet users searched for this term.

Jurin urged that Google's AdWords program and its keyword suggestion tool caused a false association between Jurin's building material and those of his competitors, in violation of the Lanham Act.

As in *Jurin*, Stayart challenges Google's practice of selling advertising, or advertising placement, tied to the purchase of keywords. As in *Jurin*, Stayart urges that Google's AdWords program and its keyword suggestion tool ("bev stayart levitra") causes a false association between her and levitra, other male sexual dysfunction remedies, and a variety of other medicines and products (*see, e.g.,* Complaint, April 20, 2010, Document 1, at 5):

> ¶ 21. Google is misleading consumers, in Wisconsin and throughout the world, by selling the keyword phrase "bev stayart levitra" and placing "sponsored links" advertisements for levitra, other male sexual dysfunction drugs, and other medicines and products on the page "bev stayart levitra" on Google's web site. *Google's described misconduct improperly creates the impression that Plaintiff endorses, supports or promotes levitra, other male sexual dysfunction drugs, and other medicines and products marketed through "sponsored links."* Bev Stayart is *not* a "sponsor" or spokesperson for male sexual dysfunction drugs. This constitutes an unreasonable invasion of privacy under Wisconsin law by improperly using her name for advertising purposes or for purposes of trade (emphasis added).

Judge Morrison C. England, Jr. of the United States District Court in Sacramento, California, initially dismissed Jurin's suit in early 2010.[1] Judge England initially held that Google had not in any way represented that it produced styrotrim products. To the extent that Jurin was arguing that Google's search results had helped facilitate confusion among consumers, that was a "highly attenuated" argument. Jurin was granted leave to file a second amended complaint, however.

Jurin then filed a new complaint. Google responded with a motion to dismiss. On reconsideration, Judge England recently refused to dismiss Jurin's false association claim. *Daniel Jurin v. Google Inc.*, 2:09-c.v.-03065-MCE-KJN (E.D. Cal., Document #50, Memorandum and Order, February 15, 2011).

Judge England concluded that Google has <u>two</u> distinct businesses based on the allegations in Jurin's Second Amended Complaint (the indexing of websites and the sale of advertising keywords). He explained (*Id.*, at 2-3):

> Defendant is a highly recognized corporation most known for its widely used search engine website. As part of operating its search engine, Defendant "indexes" websites, and collects information regarding their contents so that it, in turn, can store the information for use in formulas which respond to search queries. Generally, when a user enters a query into Defendant's website, the search engine will process relevant websites based on several information factors and then return results to the user.
>
> Web designers routinely use this process to influence their ranking on Defendant's results page. Prior to building a site, web designers will often conduct a keyword search using various available keyword tools in order to determine what terms or phrases internet users most commonly search for. A web designer will then build its site around more popular search terms in order to ensure a higher rank on a search engine results page.

---

[1] Judge England's 2010 decision in *Jurin* was *cited* and *quoted* by Yahoo in urging dismissal of Stayart's related suit against it before this court. *Beverly Stayart v. Yahoo! Inc.,* Case 2:10-cv-00043-LA, Defendant Yahoo's Memorandum of Law in Support of its Motion to Dismiss Counts One and Two of Plaintiff's Complaint, Document #10, March 22, 2010, at 11-12).

Additionally, those with more capital may advertise their websites by "bidding" on keywords. A web designer can construct an ad using popular keywords, and then pay a search engine provider a fee to bid on those keywords in an effort to appear on a search engine results page as a "Sponsored Link" whenever users enter those keywords in their search queries. The higher a web designer bids, the higher the "Sponsored Links" appear either at the top or along the side of a search engine results page. *As part of its business, Defendant allows advertisers to bid on keywords in a program called "Google AdWords" ("AdWords") and through this program, encourages advertisers to bid on additional relevant keywords using a keyword suggestion tool"* (emphasis added).

In Jurin's Second Amended Complaint, he urged that, through AdWords, Google misappropriated the name "styrotrim" for its own profit. Google allowed, and encouraged, Jurin's competitors to bid on the keyword "styrotrim" and caused their advertisements to appear as "Sponsored Links" on search results pages whenever an internet user searches for "styrotrim." *Id.*, at 4. Google's use of its AdWords program, together with its keyword suggestion tool, allegedly caused a false association between Jurin's building material and those of his competitors. *Id.*, at 9.

Jurin further argued that internet users have a reasonable expectation that websites provided to them by Google on search results pages are associated with Jurin. Jurin claimed that consumers may become "confused, mistaken, misled and/or deceived" that the "Sponsored Links" are affiliated with Jurin. *Id.*, at 7.

In moving to dismiss, Google argued that it was only a search engine, displaying search results, not a producer of building materials, and not properly a defendant under the Lanham Act. *Id.*, at 9.

Judge England refused to dismiss Jurin's Second Amended Complaint, holding that it was unnecessary for Google to be a producer of building materials, competing with Jurin, to face a false association claim. *Id.*, at 12-13. Judge England relied on the broad language of the Lanham Act and its legislative history.

5

Jurin's argument was no longer "highly attenuated."  Judge England stated (*Id.*, at 12, n. 4):

> To the extent that this conclusion runs counter to the court's previous orders (ECF Nos. 19, 39) on Defendant's prior Motions to Dismiss, the Court has now concluded that the analysis set forth herein in the *correct* one.  Any earlier determination to the contrary is hereby revised in accordance with the provisions of Federal Rule of Civil Procedure 54(b) (emphasis added).

The allegations in Stayart's suit under Wisconsin law clearly closely mirror the allegations in Jurin's suit under the Lanham Act.  Given Judge England's recent change in position, upholding Jurin's complaint, this court is asked to reconsider its dismissal order.  This court is particularly asked to review, in light of the February 2011 decision in *Jurin*, its view that (1) Google is not using Stayart's name for purposes of advertising, and (2) Google and its advertisers are not receiving a pecuniary benefit from their use of Stayart's name.

C.      Request for Clarification

Stayart requests clarification of this court's ruling of March 8, 2011, as well.  Twice this court indicates that Stayart "alleges no facts which suggest that her name has any commercial value" (Decision and Order, March 8, 2011, Document #49, at 3, 4).

It is not clear from these statements if this court has made a ruling of law that only a person whose name has commercial value may sue for invasion of privacy under Wisconsin law. This should be clarified to provide a clear record for future litigants.

If these are conclusions of law, they directly conflict with Wis. Stats. § 995.50(2)(b) and *Hirsch v. S. C. Johnson & Son*, 90 Wis. 2d 379 (1979).

The Wisconsin privacy statute contains no requirement that a plaintiff must show that their name has commercial value.  The plaintiff need only be a "living person" to sue for misappropriation of their name, portrait or picture if it is used without prior written consent for

6

purposes of advertising or trade. § 995.50(2)(b). *Accord: Conrad v. Madison Festivals, Inc.*, 2009 WL 3018031 (W.D. Wis.).

The Wisconsin common law likewise does not have any requirement of commercial value for misappropriation of one's name or likeness. Although the plaintiff in *Hirsch, supra,* was a former college and professional football player whose name had commercial value, there is no language in the Supreme Court's opinion limiting relief to celebrities.[2]

If the court's statements represent a finding of fact, then recognized principles of res judicata and collateral estoppel could prevent Stayart from relitigating the issue of standing in the future in state court.

But this factual finding directly conflicts with the decision of Judge Randa in *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873 (E.D. Wis. 2009). While Judge Randa held that Stayart's name lacked commercial value for purposes of the Lanham Act (651 F. Supp. 2d at 882), she was free to re-file state law claims for invasion of privacy without prejudice under a "pure appropriation theory" (651 F. Supp. 2d at 887).

If this court has made findings of fact, it should clarify under what circumstances Stayart can re-file related claims in a Wisconsin court.

D.      Mistakes of Fact Occurred

This court also has made errors of misinterpretation.

The litany of facts which this court found absent from the complaint are, in fact, present. When those facts are acknowledged, together with the reasonable inferences from those facts, Stayart has indeed stated a cause of action for invasion of privacy under Wisconsin law.

---

[2] Hirsch was decided under Wisconsin's common law because the facts occurred before the effective date of the statutory remedy.

7

With reference to the commercial value in Stayart's name for purposes of advertising or

trade, Stayart alleges (Complaint, April 20, 2010, Document 1, at 8):

> ¶ 37.  Plaintiff's names "Bev Stayart" and "Beverly Stayart" have commercial
> value for advertising purposes or for purposes of trade because of her public
> advocacy on behalf of the humane treatment of animals, her positive and
> wholesome image, and the popularity of her scholarly posts on the internet at
> www.saponitown.com.

> ¶ 38.    This commercial value in the names "Bev Stayart" and "Beverly Stayart"
> has been created solely by Plaintiff through the investment of substantial time,
> money and effort.

> ¶ 39.    The commercial value in the names "Bev Stayart" and "Beverly Stayart"
> is further shown by the fact that her name has become a "keyword phrase" on the
> internet (emphasis added).

> ¶ 40.    According to Compete.com, an internet analytics firm, Plaintiff's name is
> a competitive keyword phrase.  Between January 15 and April 15, 2009, at least
> five destination web sites received traffic from searchers using the term "Beverly
> Stayart."  *See*, Exhibits 1 and 2, attached hereto (emphasis added).

> ¶ 41.  The same is true with regard to the time period February 11 through May 12,
> 2009.  *See*, Exhibit 3, attached hereto.

Stayart also alleges that she has a unique and distinctive personal name (Complaint, April

20, 2010, Document 1, at 7-8):

> ¶ 36.  Bev Stayart has a unique and distinctive personal name.  Beverly Stayart has a
> unique and distinctive personal name.  Plaintiff is the only "Bev Stayart" and the only
> "Beverly Stayart" on the internet.  "Bev Stayart" refers to her, and only to her.  "Beverly
> Stayart" refers to her, and only to her.  She uses both her names in all of her endeavors.

With reference to the pecuniary benefit which Google derives from its association of

Stayart's name and picture with sexual dysfunction medications, Stayart alleges (Complaint,

April 20, 2010, Document 1, at 4-5):

> ¶ 16.    Without authorization or permission from Bev Stayart, Google has sold to
> third parties the keyword phrase which Google conceived, "bev stayart levitra."
> Advertisers bid on keyword phrases with words containing their products, such as
> levitra, to purchase "sponsored links" advertisements on Google, under Google's
> keyword advertising program.  The advertisers pay Google a fee to purchase the

keyword phrase, in this case "bev stayart levitra," to cause their advertisements to appear as "sponsored links" ads on Google's page "bev stayart levitra" on Google's web site.

¶ 17.   Without Google providing the *physical venue* for "bev stayart levitra" there would not be a physical page "bev stayart levitra" on Google's web site on which to place "sponsored links" ads.  "Bev stayart levitra" is *not* just a keyword phrase, but a *physical page* on Google's web site created by Google as a profit generation center.  "Bev stayart levitra" is an Internet billboard on which Google is selling ad space.

¶ 18.   In addition to an initial fee for purchasing the keyword phrase "bev stayart levitra," advertisers pay Google an additional "pay-per-click" fee for *each click* by internet viewers on *every one* of these "sponsored links" advertisements.  On information and belief, discovery will show how many "sponsored links" advertisements there are and the number of clicks on these ads.

*       *       *

¶ 20.   Thus, when an internet user types "bev stayart" in either the Google toolbar or the search box on Google's www.google.com web site, Google immediately suggests the search "bev stayart levitra" in its drop down menu.  Clicking this suggested search "bev stayart levitra" opens the page "bev stayart levitra" on Google's web site.  On this "bev stayart levitra" page, Google has sold the keyword phrase "bev stayart levitra" to advertisers and is displaying "sponsored links" ads for male sexual dysfunction drugs, as well as other medicines and products, for which Google receives unlimited future revenue.  This revenue is derived from selling the keyword phrase "bev stayart levitra" at auction to advertisers, and then enjoying incalculable revenue through these pay-per-click "sponsored links" ads.  (emphasis added).

And with regard to the "use" of her name for advertising or trade purposes, Stayart

alleges (Complaint, April 20, 2011, Document 1, at 3-4):

¶ 10.  After a searcher types "bev stayart" in the search box on the Google Toolbar, the suggested search term "bev stayart levitra" immediately appears in the drop down menu beneath "bev stayart," even before the searcher can press the "enter" key for "bev stayart."  After pressing the "enter" key, the following web site address appears:

http://www.google.com/search?sourceid=navclient&aq-0h&oq-bev+stayart&ie=UTF-8&rlz=1T4ADBF_en_US374&q=bev+stayart.

¶ 12.  Similarly, when a searcher types "bev stayart" in the search box on the www.google.com web site, the suggested search term "bev stayart levitra" immediately appears in the drop down menu beneath "bev stayart," without any prompting by the searcher.

9

¶ 13.  Clicking either of these "bev stayart levitra" results in the drop down menus
cited in ¶¶ 10 and 12 leads to multitudinous results for "bev stayart levitra," and,
ultimately, to almost 2,000 "sponsored links" ads for male sexual dysfunction drugs
and other medicines and products.  This initial finding of 2,000 "sponsored links"
is *not* exhaustive.  *See*, ¶¶ 111-112, *supra*.

¶14.  Plainiff is informed and believes, and, on the basis of such information and
belief, alleges that Google conceived the phrase "bev stayart levitra" through its
web robot or spider, which is the product of the algorithm Google has written.

¶ 15.  Google is responsible for the actions of its agents, including its electronic
agents.  A web robot or spider is Google's electronic agent, performing only the
commands Google builds into its algorithm.  Thus, Google is solely responsible
for the actions of its electronic agent in what is displayed, or not displayed, on
Google's web site.  Google has crossed the line, from a mere hosting site to an
information content provider and/or information content developer, in displaying
the suggested search "bev stayart levitra" in Google's drop down menu (emphasis
added).

These well-pleaded facts were never referred to by this court in its abbreviated 4-page

opinion.  These well-pleaded facts must be accepted as true by this court.  *Erickson v. Pardus*,

127 S. Ct. 2197, 2199 (2007) (*per curiam*).  These well-pleaded factual allegations are also

"enough to raise the right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 § n. 3 (2007).  The right to relief is plausible, *not* implausible.

This is because Stayart's complaint accurately reflects the operation of Google's

AdWords business model and its repeated misappropriation of her name and pictures to sell

internet ads.

Here, Google encourages internet advertisers to bid on the keyword phrase "bev stayart

levitra."  Google's proprietary algorithm (electronic agent) alone created this keyword

suggestion tool.  When an internet user clicks on Google's suggested search "bev stayart levitra",

"Sponsored Links" ads are displayed on *Google's website* on search results pages.  Most of the

10

search results list nothing but irrelevant spam web sites of *no benefit* to any internet searcher

(Plaintiff's Response to Google's Motion to Dismiss, July 15, 2010, Document 20, at 25-30).

The right of free speech is *not* unlimited, including on the internet. *United States v. William White*, 610 F. 3d 956 (7th Cir. 2010). And commercial speech (*i.e.,* advertising) is entitled to the least protection under the First Amendment. Advertising can be succinctly defined as mass marketing. In this regard, the internet offers advertisers a truly worldwide forum to reach millions.

By creating and suggesting keywords to its advertising clients, and then tying the placement of advertising to such keywords, Google does much more than publish third-party content on the internet. When that keyword is not a generic term, but the name of a living person, Google violates Wisconsin law, as well as the law of many other jurisdictions which also prohibit the misappropriation of name or likeness. *See, e.g., Lugosi v. Universal Pictures*, 139 Cal. Rptr. 35, 37 (Cal. 2d Dist. 1977):

> The tie-up of one's name, face and/or likeness with a business, product, or
> service creates a tangible and saleable product in much the same way as property
> may be created by one who organizes under his name a business to build and
> or sell houses according to a fixed plan or who writes a book, paints a picture or
> creates an invention.

This court's decision and order of March 8, 2011, is erroneous because it is based on mistakes of fact, and is contrary to Stayart's complaint. It is tantamount to issuing a license to any search engine to use the pretext of free speech to conscript any Wisconsin citizen to serve as an unwitting and unpaid endorser of products and services on the internet.

This is not and should not be the law.

If one become popular because of scholarly posts on the internet, or poetry writing, and allows publicity to be given to such talent and accomplishments, commercial advertisers, with

the help of companies like Google, can seize on such popularity to increase their sales of any article without compensation of any kind for the use of one's name or picture.

This court's decision is contrary to usage and custom, apart from violating the common law and statutory law of Wisconsin. Advertisers are undoubtedly in the habit of buying the right to use one's name or picture to create interest, demand and good will for their merchandise. But by virtue of this court's decision, any man, woman or child may have their name or picture used with impunity in connection with the placement of internet advertising, as contrasted with print, billboard or television advertising.

## CONCLUSION

For all of the foregoing reasons, this court should vacate and set aside its decision of March 8, 2011;  deny Google's motion to dismiss;  and require Google to answer Stayart's complaint herein.  In the alternative, this court is asked to clarify its opinion and order in the manner set forth herein.

Respectfully submitted,

By     /s/ Gregory A. Stayart
Gregory A. Stayart
N5577 Cobblestone Road
Elkhorn, WI  53121-3820
(262) 745-0807

Counsel for Beverly Stayart

12

**CERTIFICATE OF SERVICE**

I certify that on March 21, 2011, I electronically filed with the clerk of the court the following Plaintiff Beverly Stayart's Motion to Alter or Amend Judgment Pursuant to Rule 59(e), F.R.C.P and Request for Clarification, using the ECF System which will automatically send notification of such filing to Google's counsel:

jpeterson@gklaw.com
jgregor@gklaw.com

/s/ Gregory A. Stayart