IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

BEVERLY STAYART, )
a/k/a BEV STAYART, )
an individual, )
            Plaintiff, )
) Case No. 10-C-0336
    v. )
) Hon. Lynn S. Adelman
GOOGLE, INC., )
a Delaware corporation, )
)
           Defendant. )

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO ALTER OR AMEND JUDGMENT
AND REQUEST FOR CLARIFICATION**

    1.    <u>Standards Under Rule 59(e) To Alter Or Amend Judgment Are Met In This Case.</u>

A Rule 59(e) motion to alter or amend a judgment may be granted when the court commits clear legal error; that error may be a mistake of either law or fact. 12 MOORE'S FEDERAL PRACTICE § 59.30[5][a][iv] (Matthew Bender 3d ed.).

*See, Atlantic States Legal Found., Inc. v. Karg Bros., Inc.*, 841 F. Supp. 2d 51, 55 (N.D.N.Y. 1993) (Rule 59(e) motion properly granted when party shows that ruling is based on misunderstanding of regulatory scheme); *Motor Vehicle Mfrs. Ass'n., Inc. v. New York State Dep't of Envtl. Conservation*, 831 F. Supp. 57, 60 (N.D.N.Y. 1993) *aff'd in part, rev'd in part on other grounds*, 1 F. 3d 521 (2d Cir. 1994) (Rule 59(e) motion properly granted when court overlooked matters or controlling decisions that might have materially affected earlier ruling); *EEOC v. Lockheed Martin Corp.*, 116 F. 3d 110, 112 (4th Cir. 1997) (Rule 59(e) motion properly granted when order denying subpoena was based on court's erroneous understanding of relevance of information sought).

The timely filing of a Rule 59(e) motion gives the court jurisdiction to amend the judgment for any reason, and the court is *not* limited to the grounds contained in the motion in granting relief. *Varley v. Tampax Inc.*, 885 F. 2d 696 (10th Cir. 1988).

A district court has considerable discretion in ruling on a motion to reopen a case under 59(e). In exercising this discretion, the court must balance the competing interests of finality with the need to render a correct decision "on the basis of all of the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F. 3d 350 (5th Cir. 1993); *Lavespere v. Niagra Mach. & Tool Works,, Inc.*, 910 F. 2d 167, 174 (5th Cir. 1990). And the Federal Rules of Civil Procedure "accepts the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

    2.    <u>The Court's Ruling Of March 8, 2011 Results From A Misunderstanding Of The Facts.</u>

In opposing Stayart's request to reopen this case, Google urges that no mistakes of fact or law occurred in this court's opinion (Google's Opposition to Stayart's Motion to Alter or Amend Judgment, Document 60, at 2). Google claims that "Stayart's complaint . . . makes conclusory allegations that do not plausibly allege facts showing that she is entitled to relief" (*Id.*).

To the contrary, it is believed that repeated errors of fact and law occurred.

This court correctly observed (Decision and Order, Document 49, March 8, 2011, at 2):

> Google earns revenues by selling "keywords" to advertisers so that when a user enters a phrase connected to a keyword the advertiser's website appears at the top of the search results.

This court further stated (Decision and Order, Document 49, at 2):

> Plaintiff also alleges that Google designated "bev stayart levitra" as a keyword phrase and earns revenue from it.

2

However, instead of denying Google's motion to dismiss, this court then stated (Decision and Order, at 2):

> Plaintiff does not explain . . . how Google or the sellers of Levitra, Viagra and Cialis could possibly obtain a pecuniary benefit from such connection.

Google gains a pecuniary benefit by selling the keyword phrase "bev stayart levitra" to advertisers. It derives most of its substantial revenues[1] from companies paying for the goodwill associated with keywords. *Buying for the Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 323 (D. N.J. 2006)

Advertisers gain a pecuniary benefit by using the keyword phrase "bev stayart levitra" to achieve a more prominent placement of their ads on search results pages on the internet. *Cf. Standard Process, Inc. v. Total Health Discount, Inc.* 539 F. Supp. 2d 932, 938 (E.D. Wis. 2008) (Judge Stadtmueller):

> [I]t is undisputed that Total Health pays [search engines] to receive prominent placement as a paid advertiser in search results to searches of "standard process" on popular search engines.

By selling the keyword phrase "bev stayart levitra" to advertisers, Google and businesses both benefit monetarily from a free ride on Stayart's name without incurring the time and expense that she has spent in building her popularity and name recognition.

It is essential that a business place its internet advertising on the first few pages of search results. Otherwise, it will seldom be seen. This is because internet users generally do not look at search results beyond the first few pages. *See*, Eric Goldman, *Deregulating Relevancy in Internet Trademark Law*, 54 EMORY L.J. 507, 535 (2004).

The solution to this problem is keyword advertising.

---

[1] *See, e.g., Today in Business, Trial on Google Ad System*, NY TIMES, May 12, 2007, at C2 (The AdWords System made up 98% of Google's $10.6 billion in revenues in 2007).

The court's apparent skepticism of what occurs on the internet with regard to the keyword phrase "bev stayart levitra" is unjustified.

It is the *marketplace* that determines whether Stayart's name and pictures have pecuniary benefit to Google and its advertisers. This court is hardly in a position to "second guess" the marketplace, and must not do so. *Cf. Lugosi v. Universal Pictures*, 603 P. 2d 425, 431 (Cal. 1979) ("The so-called right of publicity means in essence that the reaction of the public to name and likeness, which may be fortuitous . . . or planned, endows the name and likeness of the person involved with commercially exploitable opportunities.").

Advertising in the United States is a well-developed business. If a person like Stayart is chosen for a campaign, her name must have some commercial value. And if her name is worth appropriating by Google, it is worth protecting by the court. As the Supreme Court has noted, preventing unjust enrichment is the primary basis for protection of the right of publicity. *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576 (1977).

*Cf. Abdul-Jabbar v. General Motors Corp.*, 85 F. 3d 407, 415-16 (9th Cir. 1996):

> To the extent [defendant's] use of plaintiff's birth name attracted television viewer's attention, [defendant] gained a commercial advantage. *See Eastwood*, 198 Cal. Rptr. at 349 ("The first step toward selling a product or service is to attract the consumers' attention.").

In the context of the internet, attention from searchers translates into money because some web visitors will choose to transact business with a website they reach, even inadvertently. As observed by one author (Paul Gilster, *Digital Literacy* 10 (1997)):

> Advertising on the Internet can be deceptive; a web page's sponsors can use content as bait, concealing the underlying pitch. Issues of reliability, conflict of interest, and trust abound.

4

The very conduct of Google in using Stayart's name and pictures to display ads for Google's advertisers is sufficient evidence of economic value, which this court fails to acknowledge.

For example, in *Fanelle v. LoJack Corp.*, a newspaper ran a story about the arrest of suspected car thieves, including Peter Fanelle. *Fanelle v. LoJack Corp.*, No. CIV A.99-4292, 2000 WL 1801270, at *1 (E.D. Pa. 2000). Fanelle's name and picture were used in the article.

LoJack, a company that sells anti-theft devices, then later used the newspaper story in an advertisement. Fanelle sued LoJack for infringement of the right of publicity.

The court denied LoJack's motion for dismissal *and* for summary judgment, in part on the grounds that "*[i]nherent in the act of a defendant using a person's name, identity or persona in a commercially advantageous manner is the presumption that the identity has commercial value*" (emphasis added). *Id*, at *11. The court explained that a reasonable jury could infer that Fanelle's name and picture "brought a reality and a concreteness to the story that made the article a more powerful advertisement for LoJack and, therefore, had value for LoJack." *Id.*

*See also, Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F. 2d 821, 824 n. 11 (9th Cir. 1974). This case involved the misappropriation of a professional race car driver's name and likeness in an advertising campaign for cigarettes.

The court observed:

> Generally, the greater the fame or notoriety of the identity appropriated, the greater will be the extent of the economic injury suffered. *However, it is quite possible that the appropriation . . . of the identity of a relatively unknown person may result in economic injury or may itself create economic value in what was previously valueless.* (citations omitted; emphasis added).

5

There is no requirement under Wisconsin law that a plaintiff must allege and prove that her name has commercial value before suing for invasion of privacy. Attached as Exhibit 1 for the convenience of the court is a copy of Wis. Stats. § 995.50.

This court's belief to the contrary contravenes the law, in addition to defying common sense. *No Wisconsin judge has ever imposed such a requirement.* This court's ill-conceived approach abrogates Wisconsin law. *See*, Ferdinand David Schoeman, *Philosophical Dimensions of Privacy: An Anthology* 177 (1984):

> Unless an individual has a right to prevent another from using his name or likeness commercially, even where the use of that name or likeness has no commercial value, no name or likeness could ever command a price.

This court further states (Decision and Order, Document 49, at 3-4):

> In order to state a claim under either § 995.50(2)(b) or Wisconsin common law, plaintiff must allege sufficient facts to enable me to plausibly infer that Google used her name for advertising or trade purposes. Plaintiff fails to do so. First, plaintiff alleges no facts which suggest that her name has any commercial value or that Google derives any pecuniary benefit as a result of the connection on the internet between her name and sexual dysfunction medications. Second, plaintiff alleges no facts which suggest that Google used her name for any purpose much less that of advertising or trade. Plaintiff's allegations establish no more than that Google enables internet users to access publically available materials connected to plaintiff's name. And it is not unlawful to use a person's name "primarily for the purpose of communicating information . . . " (citations omitted).

Again, this court continues to exhibit a fundamental misunderstanding of keyword advertising. The allegations in Stayart's complaint are plausible and create the inference that Google has violated Wisconsin law. *Ashcraft v. Iqbal*, 556 U.S. --- , 129 S. Ct. 1937, 1949 (2009).

Wisconsin privacy law also does *not* require that, in order for there to be a "use" for commercial purposes of Stayart's name, her name must appear "in" or "on" the advertisements which Google displays through the sale of the keyword phrase "bev stayart levitra." *Cf. Flores*

6

*v. Mosler Safe Co.*, 164 N.E. 2d 853, 857 (N.Y. 1959) ("A use for advertising purposes has been defined as a use in, *or as part of*, an advertisement or solicitation for patronage" (citation omitted; emphasis added). The Wisconsin privacy statute is modeled after the New York Civil Rights Law (*i.e.*, privacy statute), which was interpreted in *Flores, supra.*

In this regard, "[t]he right of publicity does not require that appropriation of identity be accomplished through particular means to be actionable." *White v. Samsung Elecs. America*, 971 F. 2d 1395, 1398 (9th Cir. 1992). *And see*, *CBC Distrib. & Mktg. v. Major League Baseball Advanced Media*, 505 F. 3d 818, 821 (8th Cir. 2007) ("a name is used for commercial advantage when it is used in connection with services rendered by the user").

This court concludes (Decision and Order, at 4) that "advertising purposes" and "for purposes of trade" under the Wisconsin privacy statute should be construed narrowly so as not to curtail the right of free speech, citing *Rand v. Hearst Corp.*, 298 N.Y. Supp. 2d 405, 409 (App. Div. 1969), a case involving the New York privacy statute.

Again, this court is simply wrong on both points. *No Wisconsin judge has ever adopted such a restrictive approach.*

Under New York law, "for advertising purposes" is actually construed *more liberally* than for "purposes of trade." *See, Manger v. Knee Institute of Electrolysis*, 233 F. 2d 5, 8-9 (2d Cir. 1956) (citing cases). New York courts have explained that relief is freely granted under the New York privacy statute when a misappropriation occurs "for advertising purposes." *See, Paulsen v. Personality Posters, Inc.*, 299 N.Y.S. 2d 501, 505 (Sup. Ct. 1968); *Stephano v. News Group Publications, Inc.*, 474 N.E. 2d 580, 584 (N.Y. 1984).

7

This court's reliance on the right of free speech under the First Amendment cannot save Google's AdWords program. The First Amendment does not absolve all violations of the rights of others. *United States v. White*, 610 F. 3d 956 (7th Cir. 2010).

As noted by the Supreme Court (*Va. State Bd. of Pharmacy v. Va. Citizen Consumer Council*, 425 U.S. 748, 771 n. 24 (1976)):

> Since advertising is the Sine qua non of commercial profits, there is little likelihood of its being chilled by proper regulation and forgone entirely.

The Wisconsin privacy statute is a proper regulation of Google's unlawful conduct. There is nothing "newsworthy" or "informational" in the use of Stayart's name or image to sell "Sponsored links" advertisements to commercial websites. Google is not a newspaper "which rests on the right of the public to know and the freedom of the press to tell it." *Downing v. Abercrombic & Fitch*, 265 F. 3d 994, 1001 (9th Cir. 2001) (quoting *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1955)).

Rather, Google is the world's largest advertising agency. *Cf. Eastwood v. Superior Court*, 149 Cal. App. 409, 420 (1983): "[O]ne of the primary purposes of advertising is to motivate a decision to purchase a particular product or service."

In short, the prohibition of unlicensed advertising under Wisconsin law does not interfere impermissibly with freedom of the press. No democratic necessity exists for a company such as Google to falsely portray Stayart as supporting commercial products such as penis pumps, methadone, and a bar in Kenosha, Wisconsin. These products have *no* connection to either "bev stayart" or "levitra."

8

### 3. There Has Been A Change In The Law.

In opposing the reopening of this case, Google also argues that there has been no change in the law to warrant such relief (Google's Opposition to Stayart's Motion to Alter or Amend Judgment, Document 60, at 1-2).

Stayart relies on *Jurin v. Google, Inc.*, another case involving keyword advertising on the internet. Google urges that the corrected 2011 opinion in *Jurin* "is not on point, and even if it were, it did not change the law at all" (*Id.* at 3).

In ruling in 2011 on Jurin's Second Amended Complaint, Judge England in Sacramento, California carefully differentiated Google's *two* businesses (indexing websites and the sale of advertising keywords). *See*, Stayart's Motion to Alter or Amend Judgment, Document 51, March 21, 2011, at 3-4.

In Jurin's Second Amended Complaint, Jurin urged that Google, through AdWords, had misappropriated the name "styrotrim" for its own profit. He further urged that internet users have a reasonable expectation that websites provided to them by Google on search results pages are legitimately associated with Jurin. Jurin argued that consumers may become "confused, mistaken, misled and/or deceived" that the "Sponsored links" sold by Google are affiliated with Jurin. (*Id.* at 5). Judge England upheld these allegations.

Judge England's 2011 opinion in *Jurin* directly supports Stayart by recognizing the right of internet users not to be deceived by Google's AdWords program.

The right of privacy/publicity seeks to protect consumers, as well as plaintiffs.

Google has purposefully employed the same deceptive tactics it used in *Jurin* to attract consumers to websites of its advertisers under the guise that they are sponsored or somehow affiliated with Stayart.

Google places few restrictions on the selection of keywords. The primary requirement is that an advertiser must choose keywords that directly relate to the content of the advertiser's website (Google AdWords Editorial Guidelines, referred to in Lauren Troxclair, *Search Engines and Internet Advertisers: Just One Click Away from Trademark Infringement?* (Student Note), 62 WASH & LEE L. REV. 1365, 1373 n. 45 (2005)). Google AdWords Specialists review all ads before running any advertisements on the internet, placing Google in a position of control over advertisers. *Id.*, at 1388-1389.

Here, the keyword phrase "bev stayart levitra," sold by Google, has no relationship, either *directly* or *indirectly*, to websites selling penis pumps, methadone or a bar in Kenosha, Wisconsin. Google victimizes the consuming public on a daily basis, as in *Jurin*, because such unauthorized endorsements, using Stayart's name or image, are essentially false claims about such products or businesses.

In addition to enforcing Stayart's rights under Wisconsin law, this court should protect the rights of the consuming public.

Suits for invasion of privacy are a type of private regulation of advertising. Michael Madow, *Private Ownership of Public Image: Popular Culture and Publicity Rights*, 81 CAL L REV 125, 228 (1993). Enforcement of such rights in the form of lawsuits against unauthorized use of a person's name or likeness protects consumers from false or misleading endorsements. *Id.*, at 228-29.[2]

## CONCLUSION

This court should vacate and set aside its decision of March 8, 2011, dismissing Stayart's complaint. This court should deny Google's motion to dismiss and require Google to answer

---

[2] Especially ludicrous is Google's argument that "it is highly implausible that Google would appropriate [Stayart's] name to bolster sales of sexual dysfunction medications" (Document 60, at 2). Google sells advertising keywords. Nowhere in Stayart's complaint does she assert Google sells sexual dysfunction medications.

Stayart's complaint.  In the alternative, the court is asked to clarify its opinion so that Stayart may proceed in state court.  The court's dismissal order, if upheld, should be a dismissal without prejudice so as to have no *res judicata* effect.

                          Respectfully submitted,

                        By:    /s/ Gregory A. Stayart

                                Gregory A. Stayart
                                N5577 Cobblestone Road
                                Elkhorn, WI  53121-3820
                                Telephone:  (262) 745-7395
                                Email:  gastayart@live.com

                                *Counsel for Beverly Stayart*

## CERTIFICATE OF SERVICE

I certify that on May 6, 2011, I electronically filed with the clerk of the court the following Plaintiff's Reply Memorandum in Support of Motion to Alter or Amend Judgment and Request for Clarification, using the ECF System which will automatically send notification of such filing to Google's counsel:

jpeterson@gklaw.com
jgregor@gklaw.com


/s/ Gregory A. Stayart